## (November 27, 1964)

■ JOHN MRAVLJA, Appellant, v. RICHARD HOKE, Respondent. GUSTAVE CHRISTMAN, Respondent, v. JOHN MRAVLJA et al., Appellants.— Per Curiam. The evidence adduced at the joint trial of these personal injury actions aris-

ing from a collision between two motor vehicles which occurred on February 14, 1963 at about 6:40 A.M., at the intersection of U. S. Route 20 and Lykers Road in Schoharie County presented questions of negligence and contributory negligence which were properly submitted to the jury in a comprehensive charge to which no exception was taken. Its finding of concurrent negligence on the part of the operators of the vehicles involved is not against the weight of the credible evidence. The use by defendant Hoke of a portion of his pretrial deposition, erroneously permitted in the circumstances, would seem not to have been of prejudicial significance for the reason that theretofore Hoke had corrected his prior testimony inconsistent therewith to conform to the tenor of the deposition. At the request of Hoke's counsel the court charged the applicability of subdivision (a) of section 1201 of the Vehicle and Traffic Law. In the absence of an exception or a request the trial court's omission to read the definition contained in section 147 thereof cannot be regarded as reversible error. (CPLR 5501, subd. [a], par. 3; *Lankes* v. *Loyal Order of Moose, Buffalo Lodge No. Eight*, 12 A D 2d 1001, affd. 10 N Y 2d 947; *Brown* v. *Du Frey*, 1 N Y 2d 190, 195.) While the verdict for plaintiff Christman was large, we are unable to say that it was excessive. Judgment in the Mravlja action affirmed, without costs; judgment and order in the Christman action affirmed, with costs. HERLIHY, J. P., TAYLOR, AULISI and HAMM, JJ., concur; REYNOLDS, J., dissents in the following memorandum: The seriously injured plaintiff Mravlja did not, in my opinion, receive a fair trial, because of vital and prejudicial errors in the rulings of the trial court and in the charge to the jury. Another jury under proper guidance should take a fresh look at this case. This plaintiff contends that he approached the intersection and stopped his car on Lykers Road. He was unable to see because of a seven-foot high snowbank on his left. He was not required to get out of his car and walk out onto U. S. Route 20 to look for traffic. He edged his car forward slowly to a point where he could see westerly up Route 20. At this point about one half of his car was beyond the snowbank on Route 20 and partially blocking the driving lane. At that point he saw the defendant Hoke about 600 feet up the road westerly. He tried to accelerate to clear the driving lane but the intersection was covered with snow and he was unable to obtain traction. He proceeded ahead at about two to three miles per hour. As he crossed into the passing lane the defendant Hoke turned his vehicle from the driving lane as to pass on plaintiff's front, using the mall area between the east and west traffic lanes. Rather than continue on a collision course, plaintiff stopped. However, instead of continuing in his chosen path, the defendant Hoke turned his car to the right and came straight down the passing lane striking plaintiff's stopped car broadside (left side). At the time of the accident, defendant could have passed to the front of plaintiff or could have passed to his rear. The driving lane of Route 20 was dry and bare yet defendant neither put on his brakes nor perceptively slowed down. On these facts, under the statutes, there can be no doubt that plaintiff had the right of way. The defendant Hoke, when called as a witness in his own behalf, stated that he first saw the Mravlja car entering the highway when he was about 500 feet from it. This was solidified by also expressing the distance by reference to the place where the divided highway began. When asked where he was on the highway when he first saw the Mravlja car he replied "Just after I come to this divided highway". The divided highway began a substantial distance west of the intersection, well over five hundred feet away. These statements were made after he had admittedly heard his friend and passenger Christman say that the Mravlja car did not come out from Lykers Road until the Hoke car was three to five car lengths

away. This testimony, with this partially blind intersection accident, was, of course, most significant. This was an admission that he could see plaintiff entering this intersection at a distance of almost the length of two football fields. A verdict of the jury in favor of defendant Hoke and against plaintiff Mravlja on this testimony would be against the weight of the evidence. Such testimony being *uninhibited* had a distinct ring of truth. This, however, was a departure from Hoke's earlier pretrial testimony where he claimed he was three to four car lengths from the Mravlja car when he first saw it. We are told that after a recess and presumably a conference between Hoke and his counsel, Hoke changed his prior testimony about where he first saw the Mravlja car to conform to his pretrial testimony. After Hoke recanted, his attorney asked to read his prior deposition which supported his changed position, basing his right to do so on CPLR 3117 (subd. [b]), which states: " Use of part of deposition. If only part of a deposition is read at the trial by a party, any other party may read any other part of the deposition which ought in fairness to be considered in connection with the part read." This the Trial Judge denied, and I think properly so, on the grounds that when Mravlja's attorney read parts of the deposition earlier in the trial the court had asked Hoke's attorney if he wanted to read any of the remainder and he said, no. Further it seems that the part sought to be read did not concern the part which had been previously read. (See 3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3117.09.) However, the Trial Judge allowed the deposition to be read under CPLR 3117 (subd. [a], par. 1) which is as follows: " (a) Impeachment of witnesses; parties; unavailable witnesses. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used in accordance with any of the following provisions: "1. any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness ". Appellant objected to this on the grounds that respondent was impeaching himself and requested that in any event the jury be instructed that the reading of this deposition was solely to contradict or impeach Hoke's prior testimony and not as evidence in chief. The court overruled both the objection and the request. It is my opinion that the deposition should not have been read. Prior to the CPLR there was some authority that a party-defendant's deposition could be read in evidence in chief by his counsel (*Masciarelli* v. *Delaware & Hudson R. R. Co.*, 178 Misc. 458). Under CPLR 3117 this is not possible unless the conditions of CPLR 3117 (subd. [a], par. 3) are met (they are not here) (Fifth Preliminary Report of the Advisory Committee on Practice and Procedure, p. 467; 3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3117.04). This leaves only CPLR 3117 (subd. [a], par. 1). CPLR 3117 (subd. [a], par. 1) is designed to be consistent with the common-law impeachment through proof of inconsistent statements. " Such use of a deposition is for the limited purpose of contradicting or impeaching the testimony of the deponent and not as evidence in chief in proving or disproving a material proposition." (3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3117.03; *Matter of Roge* v. *Valentine*, 280 N. Y. 268.) At common law a party was not permitted to impeach his own witness by showing that he made a prior contradictory statement. Section 343-a of the Civil Practice Act provided limited relief from this position but being in derogation of the common-law rule was strictly construed. CPLR 4514, the present counterpart to section 343-a of the Civil Practice Act, states: "In addition to impeachment in the manner permitted by common law, any party may introduce proof that any witness has made a prior statement inconsistent with his testimony if the statement

was made * * * under oath." This, of course, would clearly allow a party to impeach his own witness (see 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4514.01 for a discussion of the background of § 4514), but 4514 goes no further than the prior law (5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4514.02); the common-law method of impeachment is not affected (par. 4514.03); statements can be introduced for impeachment only and not as evidence in chief (par. 4514.04). The first difficulty with the present prior statement is that it is not inconsistent, at least not with Hoke's final position. They are rather consistent (see 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4514.06). If consistent they could not be introduced to bolster Hoke's position (*Robb* v. *Hackley*, 23 Wend. 50; *People* v. *Katz*, 209 N. Y. 311). Secondly, I think 4514 in any event permits impeachment of witnesses of parties and not the parties themselves (see 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4514.08). Thus allowing use of the deposition was not proper under CPLR 3117 (subd. [a]) since the statement was not inconsistent and was to impeach a party not a witness of a party. I am mindful, of course, that it may be possible under certain circumstances where a "recent fabrication" is claimed to use consistent statements to rehabilitate a witness (see Bender's N. Y. Evidence, § 150.02). I cannot see how this rule applies here since first there is no suggestion by appellant that defendant Hoke's last position was recently fabricated and secondly the prior statement must have been made at a time when there was no motive to falsify which is clearly not the case with this deposition (see Bender's N. Y. Evidence, § 150.02 n. 2). Also while it may be possible under certain circumstances to use the deposition of a witness to refresh his recollection when counsel is surprised or disappointed by his testimony or by an unexpected failure to testify to certain material facts, this is not what was attempted here (see Richardson, Evidence [8th ed.], § 487). Lastly I think, in any event, the Trial Judge erred in not granting appellant's request that the jury be immediately instructed that the deposition was not affirmative evidence (*People* v. *Freeman*, 9 N Y 2d 600, 605; *People* v. *Welch*, 16 A D 2d 554, 558). The improper handling of this vital testimony was serious prejudicial error to the great detriment of the plaintiff Mravlja. A second egregious error occurred when the court made a prejudicial charge to the jury in response to a request by Hoke's counsel. It was not disputed that the plaintiff Mravlja's car was stopped on the passing lane at the time of the accident, stopped he says to permit Hoke to continue on a course which would take him past the front of the Mravlja car. No claim is made that the car could have been stopped for more than a second or two. Following the main charge, Hoke's counsel made a request that subdivision (a) of section 1201 of the Vehicle and Traffic Law, be charged. This is the familiar stopping, standing or parking section. The request was in this form: " I would request your Honor charge section 1201, subdivision (a), in relation to stopping vehicles." The court thereupon read subdivision ·(a) of section 1201, to the jury and followed it by reading section 105 which defines a business district and section 138 which defines a residence district. The court then told the jury that section 1201 of the Vehicle and Traffic Law applied to this case if the jury found that the section of highway in question was outside of a business or residence district. This charge of the court was the last thing which the jury heard before retiring to deliberate. Whether or not plaintiff violated the law in stopping as he did in the passing lane was crucial to the determination of the case. By the court's charge, the jury was told that plaintiff violated the Vehicle and Traffic Law by stopping if the jury found the section of highway to be outside of a business or resident

district. It was clear that the highway in question was not in a business district and not in a residence district and therefore, under the court's charge, in response to defendant's request, the jury had no alternative except to find that plaintiff Mravlja violated the law. The court was careful to read the definitions of residence and business district but failed to read the statutory definition of "Stop or Stopping". If the court had read the statutory definition of "Stop or Stopping", the jury would not have been left with no alternative except to find plaintiff negligent. Section 147 of the Vehicle and Traffic Law which was not read by the court, provides: "§ 147. Stop or Stopping. When prohibited means any halting even momentarily of a vehicle, whether occupied or not, *except when necessary to avoid conflict with other traffic* or in compliance with the directions of a police officer or traffic-control sign or signal." (Italics supplied.) The testimony showed that plaintiff stopped "to avoid conflict with other traffic" within the meaning of that language in the statute. He stopped to avoid a collision with defendant Hoke. Omitting to read the definition of "Stop or Stopping" contained in section 147 of the Vehicle and Traffic Law was prejudicial error. Not having read that definition, the jury was left with no alternative except to find a verdict of no cause of action *on plaintiff's own testimony that he did stop his car in the passing lane of Route 20*. Going to the jury under such a handicap because of palpable error is not the kind of justice a litigant is entitled to in the courts of our State. Having undertaken to accede to defendant's request and charge the applicability of section 1201 of the Vehicle and Traffic Law, the court was bound to state the correct rule (*Burd* v. *Bleischer,* 208 App. Div. 499). Although the majority agrees that this charge was improper and constituted reversible error, no exception was taken and they did not choose to reverse in the interest of justice. Plaintiff Christman will not be prejudiced by a reversal. He will recover from one or both. The judgments should be reversed and a new trial granted.